Chief Justice Marshall
delivered tlie opinion of the Court.
This action of trover was brought by the executors of Goodloe Carter against (his son) Joseph C. Carter to recover damages for the alleged conversion of a note for $700, executed by the defendant to George W. Carter, (his brother,) and by him assigned to the testator in his lifetime. Among other defences attempted to be made out by evidence under the plea of not guilty, the defendant relied upon the fact that the testator’s widow, Mary C. Carter, named as one of the executors in the will, but who never qualified, had, after the testator’s death and before the qualification of the other executors or any of them, and before the probate of the wiil, and under the belief that she was acting in accordance with the intention of the testator in taking the assignment of the note, delivered it to the defendant as his to be cancelled. There was evidence conducing to establish these facts, and the Court instructed the jury, in substance, that if they believed these facts from the evidence, they must find for the defendant, which they accordingly did. And the judgment rendered thereon for the defendant is now brought up for revision.
Before entering upon the question presented by the instruction above noticed, we remark, in answer to an argument urged in suppost of the judgment, that were *328 ¡j- conceded that the plaintiff’s evidence, as stated in the record, does not prove a demand and refusal of the note, .or a direct or actual conversion of it by the defendant, . , the tacts assumed in tiie instructions, and which, upon the whole evidence, were sufficiently established, do Prove and indeed’constitute a conversion for which the defendant is liable in this action, unless Mrs. Carter, who delivered the note to him to be cancelled, had a right, as one of the executors named in the will, under *he circumstances stated in the instruction, to make a valid surrender or delivery of the note for that purpose.
It will be observed that the instruction is not based upon the belief of the jury that the testator took the assignment of the note for the benefit of the defendant, but upon their belief that Mrs. Carter acted under that impression. The jury being directed to find for the defendant upon the facts stated in the instruction, without reference to the intention with which the testator took the note, the evidence bearing upon this point need not be noticed farther than to say, that if it con- ■ duces to prove, and would have authorized the jury to find the intention of the testator to have been as supposed, it certainly is not conclusive, and cannot sustain the verdict if the instruction be erroneous. The propriety of the instruction then presents the only serious question in the case.
It appears from the testimony of George Carter and Mrs. -Carter, herself, and indeed was admitted before they testified, that Mrs. Carter had determined not to administer on the estate of her husband or qualify as executrix, before she delivered up the note to the ■defendant; and, as it may be inferred, that this determination was known to him, it would seem to be probable that the delivery of the note was not intended or understood to be an act of administration, or done under the authority derived from the will as an executor therein named, but merely an act of supposed justice and propriety in delivering to the defendant an article which blongcd to him, but was in the possession of Mrs. *329 Carter, or found among the papers or effects of her deceased husband. If such was the true character and intent of the transaction as understood by both parties, it would seem, that in point of justice and fairness, the validity of the surrender, or at least its operation as a transfer of property, or as an extinguishment of debt, would depend essentially upon the correctness of the supposition under which it was made, that is upon the right of the defendant to have the note. And it may be doubted whether, as it was not intended as an executorial act nor done in the character of executor, the delivery should, under any view of the powers of a nominated executor before qualification, be regarded conclusively divesting the executors of their interest and legal title in the note, without regard to the question of the defendant’s right to have it, and although it may have been delivered and received under an entire mistake as to that right. If this doubt be well founded, it would be questionable whether the instruction is not erroneous in not presenting to the jury the enquiry whether the note was in fact taken up by the testator for the benefit of the defendant and as a gift to him, or at least the enquiry whether it was or was not surrendered by Mrs. Carter under the authority of the will and as executrix.
Can an exeeulor ■who is nominated by the will, but who has not qualified, but intending to do so at the time, perform an act as such which will bind the executor who does qualify?— quere.
But waiving this doubt, the question on the instruction is whether this act of Mrs. Carter is, without regard to its intrinsic justice or propriety, valid as against the executors who have qualified, although she has not qualified, and has never intended to do so. Upon this question we have been referred to the 18th and 22d sections of our statute of 1797, concerning wills, &c., (Statute Law, 658 and 660,) and to the cases of Monroe vs James, in the Supreme Court of Virginia, (4 Mun. 194,) and Mitchell vs Rice, in this Court, (6 J. J. Marshall, 625.) We do not think it necessary to repeat or add to the reasoning of these cases, so far as they point out the essential difference produced by the statute in the rights and duties of executors, as compared with what they were in England under the com *330 bined operation of the common and the canon or civil law. The requisition that the executor shall execute bond with security for the faithful discharge of his duties, evinces clearly a regard for creditors and legatees, which is inconsistent with the admission of full executorial powers as existing solely by authority of the will and depending upon its being admitted to probate, without regard to the executor’s failure to qualify by taking the oath and executing the bond required. Construing together the 18th section of the statute which requires the bond to be executed, and the 22d which reserves to executors, before probate, the -same power over the testator’s estate which they had by the preexisting law, we are of opinion that, as a general proposition, the efficacy of this power to validate the acts done before probate, must depend upon not only the subsequent probate of the will by some one authorized to prove it, but also upon the subsequent qualification of the executor who performed the act. Whether if the act were lawful in its character, and done in good faith, and by a nominated executor, who at the time intended to qualify, but was prevented from doing so by some inevitable cause, death, &c., it would be deemed valid against the other executors, we need not decide, and we reserve that question as being too important to the community for any opinion to be intimated, or even formed upon it, unless actually presented. Nor is it necessary to decide whether the failure of one of the nominated executors to qualify when the others do, is a conclusive renunciation. The Court of Virginia seems to have been of opinion that it was so. We believe the impression and probably the practice in this State has been different.
If an executor \vlio has not qualified, does an act -which appertains to the duty of the executor who _ has qualified, it is not binding from the mere fact of his being nominated by the will, without subsequent qualification.
*330 But however this may be, and if it be conceded that the future qualification of Mrs. Carter would make the delivery of the note to the defendant legal and valid against all the executors, we are of opinion that it would have this effect only, because she would then have executed a bond which would secure the estate against the loss, in case the delivery was in fact im *331 proper and therefore a waste of the assets. And we are satisfied that unless she does qualify, the mere fact that she was named as executrix in the will does not legalize the delivery of the note, nor afford a protection to the defendant in this action, but he must rest upon his right to have the note, or upon his not being bound to pay it, or upon some other ground, without any aid from the character of Mrs. Carter as executrix.
U. Turner for plaintiffs; M. Brown and Smith for «defendants.
The instruction given is obviously inconsistent with these views. Wherefore, the judgment is reversed, and the cause remanded for a new trial.